```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/29/2022_

ANDREW E. ROTH,

           Plaintiff,

-against-

ARMISTICE CAPITAL, LLC, ARMISTICE CAPITAL MASTER FUND LTD., and STEPHEN J. BOYD,

           Defendants,

and

VAXART, INC.,

           Nominal Defendant.

20 Civ. 8872 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Andrew Roth, brings claims under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p ("Section 16(b)" of the "Exchange Act"), against Defendants Armistice Capital, LLC ("Armistice Capital"), Armistice Capital Master Fund Ltd. (the "Fund," and collectively, "Armistice"), and Stephen Boyd, the owner and Chief Investment Officer of Armistice Capital and a director of the Fund. *See* Compl. ¶¶ 1, 5, 40–50, ECF No. 1. Defendants move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 37. For the reasons stated below, Defendants' motion is DENIED.

## BACKGROUND[1]

    Armistice Capital is a registered investment manager that manages investments in the Fund. Compl. ¶ 3. Boyd is the sole owner of Armistice Capital and a director of the Fund. *Id.* ¶ 5. Armistice Capital, and therefore Boyd, beneficially own at least 8% of the Fund. *Id.* ¶ 27.

---

[1] The facts are drawn from the complaint and are presumed to be true. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In August 2018, the Fund began purchasing common stock in Vaxart, Inc. ("Vaxart"), a biotechnology company focused on developing oral vaccines. *Id.* ¶¶ 22, 27. A year later, the Fund owned 25 million shares, or 65.2%, of Vaxart's outstanding common stock. *Id.* ¶ 28. Plaintiff is a common stock holder of Vaxart. *Id.* ¶ 2.

In April and September of 2019, the Fund and Vaxart entered into two purchase warrants, which allowed the Fund to acquire 4,090,909 shares of common stock at $1.10 per share, and 16,666,667 shares of common stock at $0.30. *Id.* ¶ 28. The warrants included "blocker provisions," which limited the Fund's beneficial ownership of Vaxart to 4.99% and 9.99%, respectively, *id.* ¶ 29, meaning the Fund could not exercise the warrants if it owned more than that percent of the outstanding common stock, *see* Defs. Mem. at 1, ECF No. 38; Pl. Opp'n at 5–6, ECF No. 44.

Since October 25, 2019, Boyd and another member of the Armistice Capital board of directors have been on the Vaxart board, Compl. ¶¶ 5, 11, and since at least November 7, 2019, Armistice was also a director on the Vaxart board, with Boyd performing the board duties on Armistice's behalf, *id.* ¶¶ 12–13. Therefore, at all relevant times, Defendants were directors of Vaxart or were at least 10% beneficial owners of Vaxart common stock. *Id.* ¶ 16.

At the start of the COVID-19 pandemic in March 2020, Vaxart announced a partnership to develop and manufacture an oral COVID-19 vaccine. *Id.* ¶ 23. Each time Vaxart made a public update on the vaccine's development, Vaxart stock prices increased. *See id.* ¶¶ 23–24, 26. On June 25, 2020, Vaxart announced that it had been selected to participate in a non-human primate study as part of "Operation Warp Speed," a federal program to fund the development of COVID-19 vaccines. *Id.* ¶ 26. Within two days of this announcement, the price of Vaxart stock more than doubled. *Id.* From April 28 to 30, 2020, the Fund sold 6,600,000 shares of Vaxart

2

common stock for a total of $20,000,000.  *Id.* ¶ 30.  From May 5 to June 3, 2020, the Fund sold an additional 11,600,000 shares of common stock, leaving the Fund with 7,000,000 shares of common stock.  *Id.* ¶ 31.

On June 8, 2020, Vaxart and the Fund amended the warrants to change the blocker provisions, increasing the beneficial ownership limits to 19.99% for both warrants.  *Id.* ¶ 32.  The amendments also removed "the requirement to provide 60 days' notice to [Vaxart] of an increase in the beneficial ownership limitation."  *See* Vaxart Form 8-K § 8.01 (June 8, 2020), ECF No. 39-5.[2]  Less than a month later, on June 26 and 29, 2020, the Fund exercised the warrants and acquired 20,757,576 shares of Vaxart common stock.  *Id.* ¶ 36.  During the same four-day period, the Fund sold nearly all of its holdings of Vaxart's common stock, including the 20,757,576 shares it had just acquired.  *Id.*  The Fund realized at least $87 million in profits.  *Id.* ¶ 38.  Plaintiffs allege that the profits must be disgorged in accordance with Section 16(b).  *Id.* ¶¶ 42–43, 48–50.

## DISCUSSION

I. <u>Legal Standard</u>

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  Courts must accept the

---

[2] The Court shall consider the filing because it is "integral" to the complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also* Compl. ¶ 29.  Further, it is a document of which the Court may take judicial notice.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 98.  The Court will credit the filing over the complaint.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, and documents that the plaintiff knew about and relied upon when drafting the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

II.     Analysis

"Section 16(b) of the Exchange Act requires statutory insiders—those with a beneficial ownership interest of more than 10% in an equity security—to disgorge all profits realized from any purchase and sale (or sale and purchase) of the same security made within a six[-]month period." *Analytical Surveys, Inc. v. Tonga Partners*, 684 F.3d 36, 43 (2d Cir. 2012). Section 16(b) is a strict liability statute, *Gollust v. Mendell*, 501 U.S. 115, 122 (1991), because Congress determined that the "only method . . . effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great," *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972). The Exchange Act defines purchase and sale broadly. *Analytical Surveys*, 684 F.3d at 43 (quoting *Huppe v. HPCS Int'l*, 670 F.3d 214, 218 (2d Cir. 2012)). However, the Second Circuit has warned that the statute should be "employed cautiously to avoid unfair application." *Olagues v. Perceptive Advisors*, 902 F.3d 121, 126 (2d Cir. 2018).

To state a claim under the statute, a plaintiff must plausibly allege that "there was (1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). Here, the parties agree that Defendants are statutory insiders within the meaning of Section 16(b). *See* 15

4

U.S.C. §§ 78p(a)(1), 78p(b); Defs. Mem. at 10; Pl. Mem. at 4–5.  They also agree that there was a sale of securities in June 2020.  Defs. Mem. at 12; Pl. Mem. at 7.  Defendants contest whether there was a purchase within six months of that sale.  Defs. Mem. at 12; Pl. Mem. at 6–7.

Plaintiff contends that the purchase occurred when the warrant contracts were amended on June 8, 2020.  Pl. Mem. 1–2, 6–7.  The SEC's regulations treat "the acquisition of a [warrant]—rather than its exercise—[as] the triggering event," for Section 16(b) purposes. *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321–22 (2d Cir. 1998) (quotation marks omitted).  A new purchase occurs only if the amendments to the warrants were so substantial and material that the amended warrant "constitute[s] a newly-issued, rather than amended security." *Analytical Surveys*, 684 F.3d at 47; *see also Rubenstein v. Knight-Swift Transp. Holdings Inc.*, 492 F. Supp. 3d 206, 220 (S.D.N.Y. 2020).  An amendment is not material unless it "affect[s] terms . . . that are essential to the value of" the warrant, for example, "the exercise price, the expiration date, or the number of underlying shares."  *See* Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* § 10.04[5][f] (5th ed. 2019); *see also id.* § 3.03[6]. Therefore, the Court must determine if the amendments here were sufficiently material to be considered a new purchase.

Plaintiff argues that the amendments to the blocker provisions were material because they increased the number of warrants Defendants could exercise before needing to sell stock to stay below the beneficial ownership limit.  *See generally* Pl. Mem.  Plaintiff also references the removal of the sixty-day notice requirement, *id*. at 6; however, he does not rely on the removal of this provision to make his materiality argument, *see generally* Pl. Mem.  In the alternative, Plaintiff contends that discovery is needed to determine if the amendments were material.  Pl. Mem. at 14–15.

5

Courts, in analyzing amendments, attempt to determine if the changes give the defendants "latitude to use inside information to . . . realize a greater return." *Analytical Surveys*, 684 F.3d at 48. For example, the Second Circuit has held that an amendment giving more time to exercise a warrant was material because it enhanced the holder's ability "to use inside information in determining whether (and when) to" acquire shares. *Id.* at 47–48. Amendments which decreased the exercise price were also found to be material, *see Chechele v. Ward*, No. 10 Civ. 1286, 2011 WL 1405244, at *5 (W.D. Okla. Apr. 13, 2011), whereas those that increased the price were not, because an increase in price did not advantage the insider, *Rubenstein*, 492 F. Supp. 3d at 221. These cases examined whether the amendment benefited the insider, finding materiality when there was such an advantage, *see Analytical Surveys*, 684 F.3d at 48; *Chechele*, 2011 WL 1405244, at *5, and finding no materiality when there was not, *Rubenstein*, 492 F. Supp. 3d at 221.

Defendants argue that the amendments did not materially alter the agreement, rather they changed administrative attributes that had no impact on Defendants' ability to use insider information to their benefit. Defs. Mem. 14, 22–23; *see also In re Vaxart, Inc. Sec. Litig.*, No. 20 Civ. 5949, 2021 WL 6061518, at *9 (N.D. Cal. Dec. 22, 2021). Plaintiff contends that the increase in the blocker percents allowed Defendants to exercise more of the warrants and, therefore, allowed them "greater opportunity to speculate in the marketplace." *See* Pl. Mem. at 13.

Although Defendants were always able to exercise the warrants and purchase all the stock permitted under the agreements, the changes to the blocker provisions enabled them to exercise these warrants without first being required to sell off stock. Therefore, they were able to hold up to 19.99% of the outstanding common stock—rather than 4.99% or 9.99%—and still

exercise the warrants.  *See* Defs. Mem. 22.  The ability to retain more stock, logically, gives "greater opportunity to abuse inside information."  *See Analytical Surveys*, 684 F.3d at 48.  Further, although Defendants claim that the amendments changed only the number of emails they would need to send to exercise the warrants, Defs. Mem. 22, the Court shall not accept this representation in deciding a motion to dismiss.  An opportunity to exercise the warrants more expeditiously could provide an insider with "latitude to use inside information to . . . realize a greater return."  *See Analytical Surveys*, 684 F.3d at 48.  The Court concludes that Plaintiff has plausibly alleged that the amendments are tantamount to the purchase of new securities.  *See Analytical Surveys*, 684 F.3d at 47–48.

Plaintiff has adequately pleaded the necessary elements of a Section 16(b) violation:  that there was a purchase and a sale of a security by a director of the issuer within six months.  Accordingly, Defendants' motion to dismiss is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 37.

SO ORDERED.

Dated: March 29, 2022
      New York, New York

_____
ANALISA TORRES
United States District Judge